And the next case we're going to hear is New York Times v. United States Department of Justice. Thank you. Good morning, your honor, may it please the court, Thomas Byron for the Department of In this case, the district court required disclosure of five highly sensitive prosecution memoranda. Those memoranda are indisputably covered by the attorney work product privilege and therefore exempt from disclosure under FOIA Exemption 5. The district court acknowledged that and the plaintiffs don't dispute it. Nevertheless, the plaintiffs contend that the Durham investigations at issue here adopted or incorporated expressly the reasoning of those memoranda. The statements, I'm sorry, your honor, statement by a general. No, your honor, the attorney general issued two statements in 2011 and 2000 general, I think at the UN. Oh, I'm sorry. So there was a statement at the United Nations that referred generally to the investigation. And the plaintiffs also refer to the Senate Select Committee on Intelligence report. But both of those statements add nothing to the attorney general's statement. And if anything, would only be relevant in trying to ascertain indirectly whether the attorney general had incorporated or expressly adopted any of these memoranda. But the statements by attorney general referred generally to the conclusions and to the investigation, but didn't refer to any particular reasoning or rationale expressed in any of the memoranda. And in fact, they didn't refer to any memoranda at all. As the Durham declaration in the record demonstrates, he actually briefed the attorney general and the deputy attorney general orally in addition to providing the memoranda that are at issue in this case. At the time the attorney general made the statements at issue, there's no way of knowing whether the decisions that he referred to were based on any of the memoranda or an oral briefing or any particular reasoning or rationale or analysis in any memorandum or briefing. For that reason, this case is not a good basis to apply the express adoption doctrine to overcome the Exemption 5 protection of attorney work product privileged information. And the documents at issue here, the prosecution memoranda that Mr. Durham prepared are typical of prosecution memos in that they consider and include the consideration of legal defenses that might be raised at trial, the admissibility of evidence, what the evidence shows and doesn't show. All of those considerations are at the very core of what the attorney work product privilege is designed to protect. Disclosing... Counsel, let me take you through this kind of step by step, if you can hear me. First, there is the question of whether work product, though clearly protected under 5, is also subject to the exception when, in effect, Section 5 has been waived because it has been incorporated expressly by a final decision maker. Now, in your argument, your brief, you suggest that that is not an open question. I have a problem with that, given the opinion by Justice Sotomayor in wood with Judge Jacobs on the panel. But in any event, is there any reason why we should not have an express waiver with work product if we have it with respect to attorney client? The question, it seems to me, goes to what you're arguing about now. And that is, what is it that such an express waiver should do when we're dealing with work product? What is necessary in order to protect the underlying reason for a work product exception? If that's what we're focusing on, then all sorts of other things are irrelevant. You think these things are highly sensitive, but you do not question anything under the national security exception. So we might just as well not talk about that. The question is, what the Attorney General did final, and it's hard to say it was not, but then much more important was what he did an express adoption. Am I correct that that's where you're focusing? Judge Calabrese, I ought to say that some of what you said was not quite audible. So the answer may not be entirely responsive, but you have the gist of it, sir. Thank you, Judge Jacobs. And yes, Judge Calabrese, let me just see if I can restate your question in hopes of making sure I understood it. First of all, I think you were asking about this court's decision in Wood. And I agree that the decision in Wood expressly declined to decide whether prosecution memos specifically and the work product privilege generally could be overcome by the express adoption doctrine. So I think you're right about this court's case law on that point. So turning though to the second part of your question, you asked about both waiver and express adoption. And I do want to differentiate the two because they are distinct inquiries. And I don't think there's any question here of true waiver under the work product privilege doctrine that has arisen outside of one of the things I've picked up. So my real question is, where do you draw the line? What would you say would be an express adoption? So, Judge Rakoff, I think if I may point the court to the most recent cases that the plaintiffs relied on, district court relied on, Brennan Center, and LaRosa. I think just looking at what cases decided was an express adoption is a useful way to, if I may, Your Honor, I see it. Please go ahead. Exceeded. A useful way to approach the question you're asking. So there the court concluded, this court concluded, that in Brennan Center, the reference to a very short one-page document, OLC advice, was specific enough because that OLC advice had been described as addressing a particular question, the constitutionality of applying a funding restriction to foreign versus domestic entities. And that that specific reference was sufficient to demonstrate an adoption of the reasoning on that issue. And then in Brennan, I'm sorry, in LaRosa, again, the references were very specific, not just to the particular document, but also to the reasoning. And in that case, the reasoning had to do with the preemption by federal law of state law with respect to civil and criminal aspects of the immigration enforcement system. And so this court concluded that those were specific enough. Now, if I may turn to the attorney general's statements here, the concern that we've raised is that the attorney general praised the thoroughness and experience of the investigators, but he did not say anything about any of the particular reasons underlying or justifying the conclusion either to open a full criminal investigation into two incidents, to close the other inquiry into the other incidents, or not to bring charges in the end. Those could have been that are outlined in both the Durham declaration and the Hibbard declaration in the record. And the absence of a link between the attorney general's statement and the particular reasoning of any of these documents is fatal to the adoption inquiry. I do want to reserve some time for rebuttal if I may, Your Honor. You have reserved rebuttal. However, Judge Calabresi has raised an issue that I think has bearing on arguments by both counsel. And it's as follows. In light of our precedents on the attorney-client privilege, it seems very hard to conclude that the express adoption doctrine should not apply to work product privilege, but it's also true that the work product privilege is in some ways different from the attorney-client privilege. Could our approach then be, it's not the case to say it was not the case that the express adoption exception does not apply to work product, but perhaps we should construe the exception differently when dealing with work product privilege as a way of protecting that privilege insofar as it differs from the attorney-client privilege? Judge Jacobs, I think Judge Calabresi's question is accurate with respect to the core purpose of the two privileges, which does differ in important ways. So the attorney work product privilege is designed to protect the system of justice, the adversary nature of that system, and to prevent one side from learning the internal mental processes of the attorneys on the other side. But your point earlier, we don't even have to reach that question if there was no express adoption. Yes, Judge Rakoff, and I think the colloquy you and I just had addresses that secondary point. But Judge Calabresi's question I think is important to recognize that this and reluctant to address what I think is a difficult question and would be an extension of the court's prior case law with respect to attorney-client privilege. Yes, Your Honor. I think if we thought that this question of what is express adoption for the work product should be reached, that it would have helped the court to do an in-camera review. Your Honor, if the court requests an in-camera review, we, of course, would work to facilitate that. The district court did not itself undertake an in-camera review. And I'll set that aside. I'll certainly respond to the court's request if necessary. But going back to your earlier question, Judge Calabresi, that Judge Jacobs was referring to, if there were to be an inquiry into the adoption doctrine with respect to the work product privilege, it would need to recognize in this particular context the unique nature of prosecution memos and litigation decisions. So when the Justice Department decides in the exercise of its prosecutorial discretion either to bring charges or not to bring charges against a particular defendant for particular conduct, that decision is always going to be based on litigation considerations. And thus, to the extent there is an underlying analysis in a written document on the attorney work product privilege. And there are real concerns about trying to identify ways in which the Justice Department's charging decisions should be understood by their nature, which are always litigation-driven, understood to constitute express adoption or incorporation of attorney work product privileged information. So if I may, I would just set aside this particular context as uniquely sensitive and difficult. And this court might decide that with respect to prosecution in other contexts, there may be situations where express adoption could be a basis for overcoming the privilege. You don't have to reach that broader question here if you recognize the sensitive nature of prosecution memos and the prosecutorial discretion they reflect. Thank you. But given that the district court did not make a distinction between the two privileges, what would you think of our sending it back to the district court to consider such a distinction, to think about the possible differences, and then to apply in that context whether the express adoption doctrine should apply to this attorney, to this work product? What would you think of that? Judge Calabresi, it's certainly an option for this court to remand. However, this really is ultimately a legal question. We think the record is adequate for this court to address it in the first instance. But we wouldn't object to remand, of course. Thank you, Your Honor. Thank you. You've reserved a couple minutes rebuttal. Please set the time for the appellee at 15 minutes. Good morning. Good morning. May it please the court, my name is David McCraw. I appear with my colleague, Christina Conegizer, to urge the court to affirm the decision below on behalf of the New York Times and Charlie Savage. Before I get to some of the technical issues, I think it is worthwhile remembering what this case is about. In the years after 9-11, U.S. government employees or contractors physically abused dozens of detainees held abroad, two of whom died while in custody. Gul Rahman died at a CIA black site in Afghanistan. After prolonged abuse, he froze to death. Manadel Al-Jamadi died in Abu Ghraib prison. An American soldier was photographed next to the body giving a thumbs-up sign. None of the employees or contractors involved in that abuse have ever been held to account in a court of law by American prosecutors. That may have been the right decision, or it may not have been. This case stands for the simple proposition that the American people have a right to learn why no one was prosecuted. The answer to that is in these memos, and as the district court found, the law does require the disclosure of the five memos at issue. The most telling point in the government's brief appears at Roman numeral three. That's when you find they cite Brennan Center, the controlling president in this case, at page 31. It's not until page 31 that they finally get to what the law is here. Express adoption occurs when two things are true. There is a decision that is final, and in declaring that final decision, an agency expressly adopts or incorporates by reference some other product containing the rationale. That's what I'm having a problem with. I'm looking, for example, at the statement by the Department of Justice, the release of June 30, 2011, which is at the joint appendix 68 and 69. It talks about what a great job was done and how much they reviewed, but they don't seem to say at any point that the attorney general agrees with X theory, Y theory, Z theory. It just says I've accepted the results. Is that enough? Your Honor, I read that statement a little differently. First, can I level set here? What is the standard? Brennan Center sets the standard. What do we have in Brennan Center? A reference to a draft OLC memorandum, not any particular draft, but a draft OLC memorandum in a footnote to guidance given to agencies that are about to be funded. That's it. It refers to the constitutional implications of the decision. It doesn't mention what clause, First Amendment, Commerce Clause, Article II, who knows? That's all it says, the constitutional implications in a draft memo. The second piece... Your memo from the OLC is virtually always in nature the opinion of a lawyer. Therefore, it's pretty obvious it wouldn't contain a rationale since legal training trains you to do little else but to explain why it is you're giving an opinion. We don't just render advice ex cathedra. Here, what is the rationale that was And I was going to say I've appeared in Judge Rakoff's court, so I do need to answer his question, which I now think is the same thing. I think it's the same question. Yes. So when I then use that Brennan standard and look at both the 2011 standard and the 2012 standard, it does set out rationale far beyond what we see in either LaRosa or Brennan, that no charges against anyone who acted in good faith and within the scope of legal guidance of OLC. Standard that was being applied, that Mr. Durham was going to apply. Second, that unauthorized techniques of interrogation that violated the law would be the subject to prosecution. Second. Third, admissible evidence would not be sufficient to sustain a conviction beyond a reasonable doubt. All of those things are embraced in one of the two statements. Now, the Justice Department says, well, admissible evidence that would not be Not if you look at the U.S. Attorney's Manual. There are three exceptions to it. I'm not interested really in the U.S. Attorney's Manual. I'm interested in this statute. I'm interested in this statute. I mean, the reason a lawyer would give us a rationale for why to commence a litigation or not, or to prosecute somebody or not, would have to do with opinions as to the law, what the shape of it is, what the precedents are, what the theories would be of prosecution or of a complaint, and what defenses might be available to the other side, what the expense might be of prosecuting it, what the downsides are, what evidentiary problems would exist with the vulnerabilities of the other side. That's what I call the rationale for a decision to prosecute, and I don't see that. I don't see it anywhere. And, Your Honor, I think the answer to that is that in none of the precedents here has there been a requirement that the entire rationale be given, because there would be no need for the underlying document. It's the embrace of the document as the rationale. Yeah, you're assuming, therefore, that the rationale is given, because if you're talking about a document, you can assume that it has a rationale, but that's really circular. I think in this case that those, we requested the reports that were submitted based on the that they were presented to Attorney General Holder. That was the request. These are the documents which the Justice Department has identified. The idea that the statement has to go beyond simply saying, I relied on that, I think is a misapprehension of the law. Yes, but there has to be an adoption, a disclosure, the recommendation and the rationale, and you're saying that the recommendation is enough, because if you accept the recommendation, it's pretty clear there must be some rationale for it, and we'd like to know what it is, but that wasn't disclosed. I think I would, Your Honor, I think I would say that those statements go beyond that. If you look at the warm embrace that Attorney General Holder makes of Mr. Durham's work. Point me to what you think is the best indication of adoption by Attorney General Holder. I think if you look at the beginning of the 2012 statement, I'm sorry, the 2012 statement, and I'll give you the page number on that, sorry, this is the one that's at 6-2, Joint Appendix 6-2 and 6-3, that at the beginning of the Attorney General's statement, he simply toggles back and forth between what, between Mr. Durham and the Department, and you see the statement. The Department has decided not to initiate criminal charges in these matters. In reaching this determination, Mr. Durham considered it goes on, and then it concludes the Department has declined prosecution because the admissible evidence would not be sufficient to obtain and sustain conviction beyond a reasonable doubt. You see the Justice Department adopting Mr. Durham's rationale. The way I think about this, and I think the way the cases think about it, is that if you look at the final statement, and if what the final statement is saying, if you want to know why we have come to this conclusion, you need to look at this work product. That's what happens in Brennan. That's what happens in LaRosa. LaRosa, if you recall that case, the Justice Department never really talks about what it's reasoning is. It says that preclusion doesn't apply to the enforcement of civil immigration statutes, and it says that it's within the inherent authority of the states to enforce federal immigration statutes. We never see the reasoning. We never see the... But if you're arguing that there are precedents in which the rationale was not referenced or disclosed, but the document was required to be disclosed anyway, then you're describing cases that are wrongly decided. Because we know what the law is. There has to be a disclosure of the recommendation and of the rationale. And you're saying, well, you don't have to because I've got cases in which really the rationale really wasn't disclosed. Well, you're just casting doubt on other cases, which probably are correctly decided. So I don't want to keep beating on this, but there has to be the disclosure of the rationale beyond the idea that we've decided not to bring this civil lawsuit because we think we'd lose it. And if that, in fact, made a reference to a document and continued to talk about why that document was the substance of the decision, that would be the case. I think it's clear the Justice Department fully controls this. If the Justice Department simply wants to announce that it's closing an investigation and to say, as Your Honor's suggesting, that we couldn't win this, that's not express adoption. And if you look at the record here... Again, I come back to this because that's sort of what they seem to be saying and what you just pointed me to. And it's more or less, I think one can take judicial notice perhaps of the fact that this is the classic way that the department in a controversial case makes a statement, we don't have proof beyond a reasonable doubt. Sorry about that. Come back next year. But isn't that all that they're saying at Joint Appendix 63, the statement you just pointed me to? Other than they're saying, we turned it over to this fellow and boy, did he do a good job. But that's not an express adoption. That's just saying we love him and boy, boy, is it nice that he was on board. He's not quite Mother Teresa yet, but close. So what about my point? In deference to my colleagues, I think their boss can tell them they did a great job whenever and without causing any FOIA problems. But this goes beyond this. If you look at Joint Appendix 145, when they announced the closing, when General Holder announces the closing of the tape investigation, remember there was the earlier tape investigation, you have two sentences, literally two sentences. We're closing. Mr. Durham has done his work. We're closing. We lost on that. We're not arguing that. If you look at those statements from 2011 and 2012, it does what Brennan says is necessary for express adoption. It says that work product drives and justifies the decision. My reasoning, the department's reasoning, is contained in what Durham presented. It is used, as Brennan Court said, to justify to the public that it's legally sound. I think that Judge Sack's discussion of this is right on point, that any agency faces a political or public relations calculation in deciding whether or not to reference what might otherwise be a protected document. The agency is not required to explain its reasons publicly. Nonetheless, when it determines there is an advantage to doing so by referencing a protected document as authoritative, it cannot shield the authority on which it relied. In this case, as I that in some attorney client cases, we have held, adopted by reference, remarks that were pretty darn close to this. But we don't have any cases of work product. And that's my kind of question. You seem to cite attorney client cases where the adoption was as vague as this one. But how do we make the jump from that to work product? Thank you, Your Honor. I think there are two answers. One is, in La Raza, one of the two precedents that I think are critical here, that are critical here, the court essentially treats attorney work product and attorney client communication privilege the same. If you look at how La Raza deals with that, this is page 360 and 361, it says express adoption trumps the attorney client privilege. Then it cites to an attorney work privilege case, Niemeyer, and quotes it as saying, in finding that the, where litigation is foreclosed as an option, and the agency expressly chooses this choice eliminates any claim of the attorney work product. That's the citation. The court is clearly addressing attorney client communication, but the cite it uses and the quotation it uses deals with attorney work product privilege. The two are twinned. They're close siblings, as the court said below. I'd also say that in my reading of Sears, Sears actually speaks to the point. Sears says on page 161, if an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5, as we have here, that memorandum may be withheld only on the grounds that it falls within the coverage of some exemption other than Exemption 5. I have a more picky question. The, so going back, forgive me, to the two statements of Mr. Holder. Yes. So what struck me as the best statement for your point of view was on JA 63, where he, Mr. Holder is describing Mr. Dunham's work, and he says he, meaning Mr. Dunham, determined that a number of the detainees were never in CIA custody. My question is, assuming that is an express adoption of that determination, does that waive the entirety of the memos or only those portions that deal with that issue? The district court acknowledged that the entire document may not be come up through express adoption, that it, that what is brought up is the rationale. To the extent that constitutes the rationale, the application of law to facts, as I understand rationale, it would come up in anything else that constituted the rationale of the decision by the, by the district court. Under the same circumstances, same investigation, only the, there is no memo. The Attorney General says, I and my colleagues reviewed all of the evidence, trunkfuls of evidence, depositions, memoranda, advice, travel stuff, history. We reviewed all this stuff. We have four trunks full, and that's what I relied on. Would that have to be produced? I don't believe so, Your Honor. Why not? Because it is not embracing the rationale that drives and justifies the decision was made. Well, suppose, right. But let me change the hypothetical and just say that the Attorney General says, I found the rationales within those memos as supported by those transcripts, um, uh, compelling because they demonstrate that, um, that, uh, the law is not sufficient to sustain this claim. There would be powerful opposition theories, uh, we would lose and, uh, and there are evidentiary problems with our, with our case. Would, would the whole trunk have to be produced? And just to clarify, is Your Honor speaking about evidence rather than a recommendation that is the transcript referring to? Well, the, the recommendation would be, would be based upon the trunk full of materials. In other words, there's no single memo that boils it all down. I realize in government, people like to do a lot of memos. They do in law firms. I'm sure they do in your office too, but what if there was none? If there is no underlying document that is going back to the raw evidence, it's not, that is not adoption. That is a decision being made on the basis of the evidence. These cases deal with when there has been some recommendation, some work product that provides the rationale and is being accepted. This case, Attorney General Holder . . . Attorney General Holder didn't refer to a specific document. He did not. No, he did not. He did not. So basically we have my, hypothetical come to life. Except that the FOIA request makes clear that that's what we were looking for. That there were such documents. That there were those documents. But the disclosure, the assertion by the Attorney General, the public statement, didn't reference a document, a particular document or a particular written recommendation at all. Your Honor, the record is if the government's position is he received a text message, they had emails, they met, whatever it might have been, that was their burden. They didn't carry it. There's nothing in this record to suggest that anything other than these reports were what Attorney General Holder relied on. Now let's say that the report has 4,000 pages or a trunk full of attachments. Are they producible? Under the district court's decision, they are producible to the extent they are. If not, they don't. For instance, we understand. Well, if the rationale is there's not enough evidence and all the evidence is attached and the conclusion is, well, whatever it is, it's 5,000 documents, but it's not enough, then under your analysis, it will all be produced. If in fact that consists of rationale. Yes, that's right. I believe that's not the case though. That's the nature of a hypothetical. I understand, Your Honor. If there were any doubt about what Attorney General Holder had relied upon, he eliminates it in a statement he makes after he leaves office and he talks about throwing these reports on the table. It's pretty obvious that these are the things that affected the way he thought about it. I can see my time's up. Okay. This is not an uninteresting case. I'm glad you feel that way. I certainly have felt that way for the four years we've been pursuing it. Let me just end on that note, which is that all cases are important. I listened with rapid attention to the first two, honestly. But only some are not uninteresting. The government in its papers portrays express adoption as some sort of evil encroachment on government decision making. It's not that. It's really allowing the people to do what... It's unnecessary. We have FOIA. It serves important purposes. That's really where I would like to end on that is that I've litigated more than 50 FOIA cases. Mostly, even when we win, the outcome is disappointing, what we actually get. Express adoption is one of the bright, shining exceptions to that, where the American public get what FOIA intended, and that is to really understand what government was up to. I applaud this court for being a leader on that. I would urge you to affirm the district court's decision. Thank you. Mr. Byron, you're up again. Thank you, Your Honor. Just a few points on rebuttal, if I may, addressing some of the questions that you had for my colleague. The point that we were discussing before, which I think also came up in your other colloquies, is whether the general overall statement by the Attorney General, referring to this overarching standard about there is sufficient evidence to go forward with a prosecution, is adequate to demonstrate reliance on any particular rationale. I think, again... I want to come back to that sentence that I mentioned before. Assuming I agreed with you or were to agree with you that that general statement is not enough, that would open up an endless number of cans of worms, so to speak. But he goes on in the 2012 statement, Holder does, to say that Dunham determined that a number of the detainees were never in CIA custody. He's clearly... Holder is endorsing that, and why isn't that, to that least limited extent, an express adoption? So Judge Rakoff, I think, first of all, he doesn't say which incidents that refers to, and remember, this is referring to the decision in the final recommendation memo to end the investigation with respect to 99 incidents. So we don't know which of those 99 or even how many of them are covered by that reference. Now, he also references, just to be clear, a variety of issues that were considered by Durham, including status limitations, jurisdictional concerns, etc. The mere reference to those, I think, is not enough to demonstrate adoption or incorporation, even of those particular theories or concerns. But this is different. He's saying he, meaning Dunham, determined that a number of the detainees were never in CIA custody, and Holder is clearly endorsing that determination, is he not? I don't know if he's endorsing it, Your Honor. He's certainly pointing out... So this highlights one of the concerns we've had. The final recommendation memo is not itself deliberative or pre-decisional in the relevant sense for the deliberative process privilege. It is, of course, like all the other memos, the five memos here, attorney work product. So the difference, though, is that Durham himself made this determination. So the Attorney General is counsel on our cases, just on our cases, isn't a reference of that sort to not in CIA custody. Exactly what we have held to be adoption, and express adoption doesn't really mean express, but that is enough. There's a lot of other stuff that is a problem. It's hard for me to see if the past cases apply to work product, that that isn't what we've held to express adoption. Judge Calabresi, I think... I don't agree. No, I don't agree that that's the kind of statement by itself in this context, and I'll point again to this court's emphasis in Brannon Center and a determination that some of the individuals were not actually in CIA custody doesn't tell you whether that determination was made based on the strength of the evidence, the availability of the evidence, concerns about defenses that might be raised, particular testimony or other evidence. Again, all of those considerations may have gone into... No prosecution with respect to their detention would go forward because they were not detained by the United States. That would seem to be a rationale. Actually, it's a very good one. So, Your Honor, it certainly goes to the fundamental question, could you prove a case and you couldn't if you couldn't show that they were detained by the CIA, which was the fundamental point of this inquiry, or part of the point of this inquiry after all, at the outset. But I don't want to fight this too hard because I do want to move on to some other issues. Is it the case that if people were not detained by the CIA, then properly speaking, they were not the subject of the inquiry at all? So I think that's right, Judge Jacobs. The initial decision by the Attorney General to ask Durham to investigate was specifically with respect to CIA interrogation overseas. Well, with respect to these 99... 101, yes. ...the assumption, the presumption that these were people who were in the custody of the U.S. and if they weren't, then there's no inquiry to be made and there's no conclusion to be drawn. It's just not part of the subject matter. I think that's probably fair to say, Judge Jacobs, yes, looking at the two statements, both the statement by the Attorney General charging Durham with this inquiry at the outset and then referring to the closure, yes. It's outside the scope of the charge. That's probably fair to say, Your Honor. But again, I don't want to spend too much time on this and I know I've used a lot of my time. If I may make just two quick points. Go ahead. Thank you, Your Honor. So first of all, we've had some discussions already and I think it's important to reiterate that it was improper for the district court simply to equate the very clear on this record that the work product privilege function is... I vaguely remember from law school, maybe Judge Calabresi can help me out, that it's not proper to refer to the work product doctrine as a privilege. It's not actually a privilege. It's a judicially created doctrine, highly defeasible. But I'm sorry to make that picky point, but... Judge Rakoff, I know some of your opinions have addressed this and others have too. There's some debate about this point. Whether it's called a doctrine or not, it serves the same function as a privilege, indisputably. The second thing I want to emphasize, though, is that there's a very clear difference between exercise of prosecutorial discretion deciding whether or not to charge a defendant with a crime, on the one hand, which is what's at issue here. And on the other hand, the prospective policy decision of an agency, which may be supported by the adoption of legal advice, as this court held in Brennan Center and La Raza, it would be a major expansion of the express adoption doctrine to hold that it applies to the Justice Department's prosecutorial discretion in charging decisions. On the other hand, the statute doesn't seem to make that distinction. The distinction you're talking about makes sense, but it's not really in the statute. You mean FOIA Exemption 5, Your Honor? Yes, yeah. So I think FOIA Exemption 5 is fairly understood to protect all of these privileges and to require, to the extent that express adoption can be applied to any privilege, that the purpose of the privilege be considered. And the particular purpose— But let me turn to that a moment. And suppose we have a case that has none of the heat of this one. It is a local case involving decision not to prosecute. And the decision not to prosecute is made by a high enough officer so it is a final one. And people are interested in why the decision not to prosecute took place. And the Attorney General, whoever made the final decision, adopts a document and publicly says so, that there are reasons in this document, apart from the ordinary prosecutorial ones, that led us not to do this. Isn't that subject to the exception to the Rule 5 Exclusion? Isn't that exactly what would apply? So I'm troubled by your general statement that because this involves just a tutorial decision, the same reasonings about the public's right to know don't apply. And that's very important to me because I don't feel this case, as either of you have said, one involving national security or one involving desperate issues. For me, the plain question is, we have made some exceptions to a work product exception, and do they apply here? So, Judge Calabrese, I heard most of what you asked, but I missed a few of the details, so apologies if I get some of this wrong. But let me see if I can address the concern that I think you're getting at, which is, to the extent that this Court's decisions in the attorney-client context have held that the incorporation or adoption of an underlying document or its reasoning can justify disclosure of that document when the adoption is invoked for a policy decision. I think that was what you were getting at. I think that, again, this goes back to the distinction I was trying to draw between an agency's prospective policy judgment and a decision either to bring charges or not. And I think it's important that there really isn't a basis here for distinguishing between a decision to charge a defendant and a decision not to charge a defendant. Both of them are equally protected by the work product privilege and both equally implicate the administration of justice concerns and the prosecutorial discretion concerns that we've emphasized throughout this case. Michael's piano makes clear, and other cases do too, that whether a suit is brought or not, if a document was prepared in contemplation of litigation, it is protected. And even after litigation is over, it remains protected if the litigation was brought. I think all of those concerns emphasize why the fact that no charges were brought here shouldn't alter the outcome and shouldn't minimize the concern that we've raised about prosecutorial discretion in the administration of justice. Thank you. Thank you, Your Honor. We'd urge reversal. Thank you both. We'll reserve decision.